IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JOHN GOLDEN, JR.,** *as parent and*
*next of friend to A.G., a minor*  **PLAINTIFF**

v.  Civil No. 1:21-cv-378-HSO-BWR

**FAMILY DOLLAR STORES OF**
**MISSISSIPPI, INC.**  **DEFENDANT**

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT FAMILY DOLLAR STORES OF MISSISSIPPI, INC.'S MOTION [48] FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendant Family Dollar Stores of Mississippi, Inc.'s Motion [48] for Summary Judgment. The Motion [48] is fully briefed. Having considered the Motion [48], the parties' filings, and relevant legal authority, the Court finds that Defendant Family Dollar Stores of Mississippi, Inc.'s Motion [48] for Summary Judgment should be granted, and that this civil action should be dismissed.

### I. BACKGROUND

Plaintiff John Golden, Jr., as parent and next of friend to A.G., a minor ("Plaintiff" or "Golden"), alleges that A.G. was injured on September 14, 2020, after slipping and falling at a store owned and operated by Defendant Family Dollar Stores of Mississippi, Inc. ("Defendant" or "Family Dollar") in Harrison County,

1

Mississippi.[1] Compl. [1-1] at 2; Ex. [48-10] at 1. This fall occurred as A.G., while shopping with her family, walked down an aisle stocked with juice, water, and candy. Compl. [1-1] at 2; Ex. [57-17] at 4-8. Plaintiff alleges that A.G.'s fall was caused by water that had accumulated on the floor due to condensation dripping from an overhead air conditioning system. Compl. [1-1] at 2; Ex. [48-3] at 3-4; [48-4] at 4; [57-1] at 1. Plaintiff asserts that A.G. suffered injuries to her head, neck, and back. Compl. [1-1] at 2; Ex. [57-1] at 1; [57-17] at 9.

On October 25, 2021, Plaintiff filed a Complaint [1-1] in the Circuit Court of Harrison County, Mississippi, alleging that Defendant is liable for A.G.'s injuries under a premises liability theory. Compl. [1-1] at 2-3. Plaintiff claims that Defendant "failed to take measures reasonably calculated to remove [the dangerous condition of the wet floor] or warn the minor Plaintiff of its existence." *Id.* at 2. Defendant removed the civil action to this Court on November 23, 2021, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. Not. of Removal [1].

On November 1, 2022, Defendant filed the present Motion [48] for Summary Judgment, asserting that it is not liable because there is no evidence to demonstrate that it created the hazardous condition or had prior notice of it. Mem. [49] at 2, 5-6; Ex. [48-5] at 4; [48-6] at 4-6; [48-7] at 3; [48-8] at 3. Defendant contends that summary judgment is appropriate because Plaintiff "has failed to establish a

---

[1] The record is unclear as to whether the Family Dollar store at issue is located in Biloxi or D'Iberville, Mississippi. *See, e.g.*, Compl. [1-1] at 2 (stating the store is located at "4526 Popp's Ferry Road, Biloxi, MS"); Ex. [57-1] at 1 (incident report stating the store's location is 4526 Popp's Ferry Road, D'Iberville, MS); Mem. [49] at 1, 11 (stating that the store's address is "4526 Popps Ferry Road, Biloxi, Mississippi" but later referring to it as "the subject Family Dollar in D'Iberville"). Regardless of the correct street address of the store, it appears that it was commonly known as the D'Iberville location of Family Dollar. *See* Ex. [48-6] at 2; [57-2] at 1; [63-2] at 1-2.

2

genuine issue of material fact as to notice, actual or constructive, or active negligence in creating an alleged hazardous condition." Mem. [49] at 16-17.

Plaintiff responds that the evidence demonstrates a genuine issue as to whether Defendant created the hazardous condition or whether it had constructive notice of the water on the floor. Mem. [58] at 14-16. Regarding Defendant's creation of the hazardous condition, Plaintiff relies on a chain of events, noting that "the store had a history of being 'hot,'" and that the day in question was particularly humid. *Id.* at 14-15; Ex. [57-7] at 1; [57-20] at 9; [57-22] at 7; [57-24] at 13-14. In light of this humidity, Plaintiff contends that Defendant caused the excess condensation on the air conditioning vent by keeping a stockroom door open for several hours while employees unloaded a freight truck. Mem. [58] at 3, 9, 15; Ex. [57-8] at 2-3; [57-20] at 7-8, 12, 16; [57-22] at 4, 7; [57-23] at 3, 7-8. As to Defendant's constructive notice of the hazardous condition, Plaintiff asserts that the dangerous condition existed in the store starting at 11:10 A.M., approximately four to five hours before A.G.'s fall, and that the amount of "water that accumulated from [the] AC vent was such that it drenched the back of [A.G.]'s shirt and, ultimately, required a bucket to be placed underneath it." Mem. [58] at 7, 15-16; Ex. [57-1] at 1; [57-8] at 2-3; [57-10] at 2; [57-16] at 3; [57-17] at 3; [57-18] at 2.

In reply, Defendant counters that Plaintiff has not presented any evidence or witness testimony to show that any condensation on the air conditioning vent was caused by its employees keeping a stockroom door open. Reply [64] at 7. Defendant further maintains that Plaintiff can only speculate about the length of time that

3

any dangerous condition existed in the store, *id.* at 9, and that none of Plaintiff's evidence indicates that Family Dollar or its employees knew of any hazard prior to A.G.'s fall, *id.* at 8-10.

## II. DISCUSSION

A. Summary judgment standard

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact" and it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Saketkoo v. Admins. of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022) (quoting *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute "is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* (quoting *Hamilton*, 232 F.3d at 477).

The movant must "identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact.'" *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic

argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Pioneer Expl., L.L.C.*, 767 F.3d at 511 (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)). When considering the record, a court must view all evidence in the light most favorable to the nonmovant and draw all reasonable inferences in his favor. *Id.*

B.  Mississippi premises liability law

1.  General standard

In Mississippi, a store proprietor "owes a duty to an invitee to exercise reasonable care to keep the premises in a reasonably safe condition and, if the operator is aware of a dangerous condition which is not readily apparent to the invitee, he is under a duty to warn the invitee of such condition." *Munford, Inc. v. Fleming*, 597 So. 2d 1282, 1284 (Miss. 1992) (quoting *Jerry Lee's Grocery, Inc. v. Thompson*, 528 So. 2d 293, 295 (Miss. 1988)); *accord Pigg v. Express Hotel Partners, LLC*, 991 So. 2d 1197, 1199-1200 (Miss. 2008). The parties do not dispute that A.G. qualified as a business invitee at the time of her fall, and was therefore owed this duty of reasonable care. Mem. [49] at 4-5; Mem. [58] at 13.

A proprietor "is not an insurer against all injuries." *Munford, Inc.*, 597 So. 2d at 1284 (quoting *Jerry Lee's Grocery, Inc.*, 528 So. 2d at 295). Accordingly,

> for a plaintiff to recover in a slip-and-fall case, he must show that the proprietor had actual knowledge of a dangerous condition, *or* the dangerous condition existed for a sufficient amount of time to establish constructive knowledge, in that the proprietor should have known of the condition, *or* the dangerous condition was created through a negligent act of a store's proprietor or his employees.

5

*Id.* (emphasis in original). If a store operator did not have prior notice, whether actual or constructive, and did not create the dangerous condition, it is not liable for a plaintiff's injuries. *Id.*; *Pigg*, 991 So. 2d at 1200.

2. <u>Whether Defendant created a dangerous condition</u>

Plaintiff first argues that Defendant created a dangerous condition because its employees allegedly left a stockroom door open for several hours on the day of A.G.'s fall. Mem. [58] at 14-15. According to Plaintiff, this open door allowed humid air to enter the already-hot store, creating excess condensation on the air conditioning vent, which then dripped onto the floor. *Id.*

Plaintiff has not provided any competent summary judgment evidence to show that any leaking or falling water from the air conditioning vent was caused by a stockroom door being kept open. Plaintiff cites to testimony from an assistant manager at the Family Dollar store, Lisa Richoux ("Richoux"), who noted that the back stockroom door is left open for an hour and a half to two hours during freight days, *see id.* at 15 (citing Ex. [57-23] at 7); *see also* Ex. [57-22] at 7 (testimony by another Family Dollar employee that the stockroom door could be open for two to three hours on a freight day), but Richoux did not testify that any open door caused condensation on the vent, *see generally* Ex. [48-8]; [57-23]. Instead, Richoux and the other Family Dollar employees testified that there were no known problems with the air conditioning system and that they had not previously seen condensation on the vents due to humidity. Ex. [48-5] at 4; [48-6] at 6; [48-7] at 3; [48-8] at 3-4. While A.G.'s father testified at his deposition that he saw water coming from the

6

vents, he did not know what caused it. Ex. [48-4] at 5. Likewise, A.G.'s mother testified that she saw condensation on the vent, but she never saw any water drip from the vent, nor did she testify as to knowing what caused any condensation. Ex. [48-3] at 4-5.

Although a plaintiff "need not *definitively* prove the exact identity of the substance or how it came to be on the floor," there must be sufficient evidence to reasonably conclude that the condition of the floor was traceable to an act by the proprietor or its employees. *Clinton Healthcare, LLC v. Atkinson*, 294 So. 3d 66, 72 (Miss. 2019) (emphasis in original). For example, Mississippi courts have found sufficient circumstantial evidence of causation where a plaintiff slipped on water at a nursing home in front of a shower room door when the plaintiff "produced evidence that residents in wheelchairs were showered shortly before her fall, that standing water was in front of the shower room door, . . . and that no drying mechanism other than towels was used for drying residents after showers." *Id*. Similarly, in a case involving a customer who slipped on loose pasta, evidence that a pasta package had been cut and that employees used case cutters to unpack merchandise was sufficient to suggest that the employees' actions could have caused pasta to spill on the aisle. *Miss. Winn-Dixie Supermarkets v. Hughes*, 156 So. 2d 734, 737-38 (Miss. 1963).

Importantly, "the circumstantial evidence must be such that it creates a legitimate inference that places it beyond conjecture." *Green v. Supermarket Operations, Inc.*, 330 So. 3d 434, 439 (Miss. Ct. App. 2021) (quoting *Higginbotham v.*

*Hill Bros. Constr. Co.*, 962 So. 2d 46, 58 (Miss. Ct. App. 2006)). As a result, Mississippi courts have found that testimony indicating only that water on the floor came from a trail behind an ice freezer is insufficient to show that a defendant store caused a dangerous condition. *Id.* at 436, 439. Here, Plaintiff has not presented any evidence beyond conjecture that humidity from the open stockroom door caused any condensation on the air conditioning vent, or caused any such condensation to drip onto the floor. *See* Ex. [48-3] at 4-5; [48-4] at 5; [57-10] at 2. Only speculation suggests that Defendant or its employees created any hazard on the floor. Plaintiff lacks sufficient evidence to create a genuine inference that the stockroom door opened by Defendant's employees caused the condensation and that the condensation created a hazardous condition on the floor where A.G. slipped.

   Plaintiff argues that Defendant should have taken different actions with respect to the stockroom door in light of the humidity, *see* Mem. [58] at 15, but this argument is unavailing. To the extent that humidity can cause condensation, the undisputed evidence is that the heat in the store, the humidity in South Mississippi, and the open stockroom door were all regular occurrences. *See* Ex. [57-20] at 9; [58-22] at 4-5, 7; [57-24] at 13-14. Yet, until A.G.'s fall, there had been no reports or prior incidents of condensation from the air conditioning vent caused by the open stockroom door, much less evidence that keeping the stockroom door open created a hazardous condition on the floor. Ex. [48-5] at 4; [48-6] at 6; [48-7] at 3; [48-8] at 3-4. Under these facts, the Court cannot conclude that there was a reasonable probability that Family Dollar's typical method of handling freight caused a

8

dangerous condition. *Cf. Patricola v. Imperial Palace of Miss., LLC*, 235 So. 3d 214, 218 (Miss. Ct. App. 2017) (finding a reasonable probability that humidity could cause dripping condensation where employees admitted such condensation "occurred with some regularity" and another witness had seen water on the floor on multiple occasions).

Moreover, in a similar slip-and-fall case allegedly caused by condensation falling from an air conditioning vent, the Mississippi Court of Appeals found that the plaintiff lacked sufficient evidence to show that the proprietor caused a dangerous condition without proof "that the air conditioner, vent, or some other aspect of the property was negligently constructed or maintained." *Id.* at 218-19. Plaintiff has presented no evidence of negligent construction or maintenance.

Plaintiff's speculative theory that the open stockroom door caused excessive condensation to accumulate on the air conditioning vent and to drip onto the floor is insufficient to create a material fact question on whether Defendant or its employees created a hazardous condition. *See Green*, 330 So. 3d at 439.

3. <u>Whether Defendant had prior notice of a dangerous condition</u>

In the absence of evidence that Defendant created a dangerous condition, Plaintiff must demonstrate that Defendant had prior knowledge of the condition, whether actual or constructive. *Munford, Inc.*, 597 So. 2d at 1284. Plaintiff does not argue that Defendant had actual notice of any water on the floor where A.G. slipped, *see generally* Mem. [58], and the unrebutted testimony of all of Defendant's

9

employees is that they had no knowledge of any dangerous condition on the floor prior to A.G.'s fall, Ex. [48-5] at 4; [48-6] at 6; [48-7] at 3; [48-8] at 3-4.

The only evidence Plaintiff offers to suggest that Defendant possibly knew of a problem with the air conditioning vent comes from an affidavit by Theresa Braddock ("Braddock"), a witness to A.G.'s fall. *See* Ex. [57-10]. In this affidavit, Braddock asserts that she left the Family Dollar store at some point after A.G. slipped and returned about thirty minutes later. *Id.* at 2. Braddock testified that upon her return she overheard Dana Waltman ("Waltman"), a store manager, state that "I told them it was leaking," at some point after Braddock had re-entered the store. *Id.*; *see also* Ex. [48-7] at 2.

This alleged statement by Waltman is insufficient to create a genuine issue as to whether Family Dollar had actual or constructive notice of any dangerous condition related to the floor where A.G. fell. The statement does not establish what was leaking or when Waltman became aware of it, or precisely when she informed anyone about the leak. Braddock claims that the "it" refers to "the ceiling," but she does not offer any evidentiary basis for this belief beyond her own speculation, *see* Ex. [57-10] at 2, and even Waltman's general knowledge of a leak from the ceiling somewhere would be insufficient to prove actual prior knowledge of a problem in the area where A.G. fell, *see Jones v. Imperial Palace of Miss., LLC*, 147 So. 3d 318, 321 (Miss. 2014) (finding no actual knowledge of a dangerous condition where the defendant knew that some of its parking bumpers were misaligned but "the plaintiff

produced no evidence that [the defendant] knew or had reason to know that the particular bumper that caused [the] injury was misaligned").

Even if the "it" in question referred to the air conditioning vent, Braddock's affidavit lacks any specificity as to when Waltman became aware of the leak, when she told "them" about the leak, or who exactly "them" would be. Nothing besides speculation suggests that Waltman's statement refers to some communication prior to A.G.'s fall, and the pertinent question here is whether Defendant knew of the water before A.G.'s injury occurred. *See Jacox v. Circus Circus Miss., Inc.*, 908 So. 2d 181, 184-85 (Miss. Ct. App. 2005); *Pioneer Expl., L.L.C.*, 767 F.3d at 511 (noting that speculation and improbable inferences are not sufficient at the summary judgment stage). Accordingly, Plaintiff has not demonstrated that Defendant had any actual notice of a dangerous condition.

As for constructive notice, Plaintiff must show that the dangerous condition existed for a long enough period that Defendant should have known of its existence had it exercised reasonable care. *Jacox*, 908 So. 2d at 185. To show the amount of time that the condition existed, a plaintiff must have "specific proof as to the actual relevant length of time," and "the court will indulge no presumptions to compensate for any deficiencies in the plaintiff's evidence as to the time period." *Id.* (citing *Waller v. Dixieland Food Stores, Inc.*, 492 So. 2d 283, 286 (Miss. 1986)). Such impermissible presumptions include relying on the time between the last inspection of the floor and the fall. *Waller*, 492 So. 2d at 286.

11

Plaintiff argues without citation to any evidence that "the dangerous condition in the D'Iberville store started soon after the arrival of the store manager at 11:10 a.m." Mem. [58] at 15. Plaintiff bases this assertion on the assumption that the condensation began to accumulate the moment employees started to unload the freight truck. *See id.* While there was no direct testimony that September 14, 2020, was a freight day, Family Dollar employees did state in their depositions that typically two managers and a cashier would be present at the store if it were freight day, Ex. [57-24] at 9-10, and two managers and a cashier were in fact working on the day of the incident, Ex. [57-8]. The first manager worked from 7:31 a.m. to 3:03 p.m., while the second manager arrived at 11:10 a.m. and worked until 9:39 p.m. *Id.* at 2-3. Waltman, who was the second manager to arrive that day, testified that typically she would work at the store alone from 2 p.m. to 4 p.m., unless it was a freight day. Ex. [57-20] at 11-12. According to the employees' testimony, it could take one and a half to three hours to unload the trucks, during which time the stockroom door would be left open. Ex. [57-22] at 7; [57-23] at 7.

Assuming that the day in question was a freight day, Plaintiff still has not provided specific proof that the condition of an open stockroom door began at 11:10 a.m. Moreover, as the Court previously discussed, the record is devoid of non-speculative evidence demonstrating that an open stockroom door caused any condensation on the air conditioning unit. Plaintiff has not pointed to anything in the record that establishes what time a freight truck arrived on the day in question, or even when a truck would usually arrive on freight days. Instead, Defendant's

12

employees testified that the deliveries occurred at "different hours." Ex. [57-20] at 3. Plaintiff's claim that the condition began around 11:10 a.m. is based on the time that Waltman arrived at the Family Dollar store, *see* Mem. [58] at 15-16; Ex. [57-8] at 3, but Plaintiff has presented no evidence that any freight truck arrived around the same time as Waltman. Employee time sheets that day indicate that there was a nearly four-hour window in which two managers were working at the store, from 11:10 a.m. until 3:03 p.m. *See* Ex. [57-8] at 2-3. Given the testimony that the deliveries occurred at "different hours" and Plaintiff's speculative connection between the stockroom door and any water on the floor, Ex. [57-20] at 3, the Court cannot presume that the truck arrived, the door opened, and the dangerous condition began at 11:10 a.m. rather than at some later point. *See Jacox*, 908 So. 2d at 185; *Waller*, 492 So. 2d at 286.

      Plaintiff argues that the "amount of water on the floor from condensation from an AC vent is revealing as to the amount of time this dangerous condition existed with no attention." Mem. [58] at 16. However, the record does not establish how much water, if any, was actually on the floor. While A.G.'s sister testified that A.G.'s shirt appeared to be soaked, she also stated that she did not see any moisture or water on the floor. Ex. [57-18] at 2. A.G.'s mother testified that she did not notice anything on the floor and never saw any water drip from any condensation on the air conditioning vent during the five minutes while A.G. lay on the floor beneath the vent. Ex. [57-17] at 2, 6-7. A.G.'s father, who asserts that he noticed the condensation on the vent, testified that he did not know whether that condensation

13

"was coming on the floor or not," and that he did not see any puddles of water or moisture. Ex. [48-4] at 2. Instead, he described the floor as "sweaty" and stated that "it blends in with the tile or concrete." *Id.* at 3. A.G. herself stated that she only felt moisture on her short-sleeved shirt, not on her skin, and did not notice any moisture on the floor while she was lying on the ground. Ex. [48-1] at 2; [57-16] at 3. The photos of A.G. lying on the floor also do not establish how much water was on the floor of the aisle and whether that water was attributable to condensation from the vent. *See* Ex. [57-10]; [57-11].

In light of this testimony that no member of A.G.'s family saw any accumulated water on the floor even after A.G. fell, it is unclear how Defendant failed to exercise reasonable care because it likewise did not notice and address any purported moisture on the floor during the alleged hours when this condition existed. *See Jacox*, 908 So. 2d at 185 (finding no constructive knowledge where the plaintiff testified that there was no visible indication of a problem). Further, without any testimony or other evidence indicating the amount of water on the floor, or for how long it was present, the Court cannot infer that the water was present long enough that Defendant should have known about it. *Waller*, 492 So. 2d at 286; *cf. Patricola*, 235 So. 3d at 218 (permitting an inference that water had accumulated gradually and that the proprietor had constructive notice where evidence demonstrated that the puddle "was approximately twelve inches in diameter").

14

In sum, Plaintiff relies on speculation as to the amount of time that any dangerous condition existed on the aisle. Such conjecture does not provide "specific proof as to the actual relevant length of time" as is required to establish constructive notice. *Jacox*, 908 So. 2d at 185. Defendant is therefore entitled to summary judgment.

### III. CONCLUSION

The Court finds that Defendant's Motion [48] for Summary Judgment should be granted because Plaintiff has not established that Defendant caused the dangerous condition or had prior knowledge of it. *See Munford, Inc.*, 597 So. 2d at 1284. To the extent the Court has not directly addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Family Dollar Stores of Mississippi, Inc.'s Motion [48] for Summary Judgment is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff John Golden, Jr., as parent and next of friend to A.G., a minor's, claims are **DISMISSED WITH PREJUDICE**. The Court will enter a separate Final Judgment in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 22nd day of February, 2023.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE